IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXANDRA RUGGIERO, | : Civ. No. 1:25-CV-604 |
| | : |
| Plaintiff, | : |
| | : (Chief Judge Brann) |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant. | : |

## REPORT AND RECOMMENDATION

I. <u>Introduction</u>

Alexandra Ruggiero filed a Title XVI application for supplementary security income on April 25, 2022.[2]  Following an initial hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Ruggiero was not disabled from her alleged onset date of disability of January 1, 2021, through May 14, 2024, the date of the ALJ's decision.[3]

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

[2] Tr. 18.

[3] Tr. 18, 35.

Ruggiero now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[4] we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

On April 25, 2022, Ruggiero applied for supplemental security insurance benefits, citing an array of physical and mental impairments, including anxiety with panic attacks, depression, high cholesterol, obesity, obsessive compulsive disorder, pre-diabetes, and a thyroid condition.[5] Ruggiero was 51 years old at the time of the alleged onset of disability, had at least a high school education, and had no relevant past employment.[6]

---

[4] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

[5] Tr. 217.

[6] Tr. 34.

2

With respect to these alleged impairments the record revealed the following: The earliest relevant records are from Ruggiero's visit to the Wright Center for Community Health in April of 2019.[7]   There, she explained to Dr. Enrique Samonte her impairments of general anxiety and claustrophobia, and that she took levothyroxine for hyperthyroidism.[8]

In December of 2021, Ruggiero reported increased panic attacks to Dr. Kristi Simonetti, who noted these attacks were likely caused by recent family hardships.[9]   In March of 2022, Dr. Gary Oh prescribed Buspirone to combat Ruggiero's worsening anxiety.[10]  At a May 2022 visit with Dr. Mohana Partheeban, the door to the examination room was left open due to Ruggiero's anxiety and claustrophobia.[11]

In December of 2022, Ruggiero received a mental status examination from Ms. Gina Lombardi, M.A., at IMA professional

---

[7] Tr. 780-83.

[8] Tr.  780.

[9] Tr. 320-22.

[10] Tr. 317.

[11] Tr. 311.

Services of PA.[12]  Ruggiero reported sad moods, crying spells, loss of usual interest, irritability, agitation, fatigue, concentration problems, and social withdrawal.[13]  Lombardi also noted anxiety, evinced by worry, fatigue, irritability, difficulty concentrating, and avoidance of social settings.[14]  She noted Ruggiero was having trouble both falling and staying asleep, suffered panic attacks, only felt safe when at home, and was having anxiety about changes in her body.[15]  Ruggiero showed signs of memory impairment: she was unable to remember three objects after a delay, which Lombardi attributed to anxiety.[16]  Lombardi diagnosed major depressive disorder, recurrent and moderate, as well as generalized anxiety with panic attack.[17]

Lombardi also filled out a form entitled "medical source statement of ability to do work-related activities (mental)" as part of her

---

[12] Tr. 361.

[13] Tr. 362.

[14] Tr. 362.

[15] *Id.*

[16] Tr. 364.

[17] *Id.*

assessment.[18]    There, Lombardi indicated that Ruggiero had extreme restrictions to carrying out complex instructions and in her ability to make judgments on complex work-related decisions.[19]    Lombardi also found marked limitations to Ruggiero's abilities to understand and remember complex instructions and to interact appropriately with supervisors and co-workers, and extreme limitations on her abilities to respond appropriately to typical work situations and to respond to changes in a routine work setting.[20]

Ruggiero reported worsening depression to Dr. Brian Grady in February of 2023.[21]    Her symptoms included decreased energy, feeling down, increased anxiety from financial problems, and multiple panic attacks per week.[22]    Dr. Grady noted concern with Ruggiero's elevated lipid panel, blood pressure, and A1C readings.[23]

---

[18] Tr. 366.

[19] *Id.*

[20] Tr. 366-67.

[21] Tr. 399-402.

[22] Tr. 399.

[23] Tr. 400.

In June of 2023, Ruggiero reported to Dr. Partheeban that she was continuing to suffer from anxiety, as well as insomnia, and that her anxiety sometimes made her unable to drive.[24]  At a follow-up in July of 2023, Ruggiero continued to report insomnia, and Dr. Warren Lam noted that Xanax and melatonin had helped with, but failed to cure, Ruggiero's insomnia.[25]  In August of 2023, Ruggiero reported her anxiety was leading to binge eating.[26]

It is against this factual backdrop that the ALJ conducted a hearing in Ruggiero's case on March 6, 2024.[27]  Ruggiero and a vocational expert ("VE") both testified at this hearing.  Ruggiero waived her right to a representative at the hearing, and then testified about, *inter alia*, her treatments, her difficulties sitting and standing for long periods, her panic attacks while driving, the recent death of her service dog, and her activities of daily living.[28]  The VE in his testimony answered

---

[24] Tr. 613.

[25] Tr. 607.

[26] Tr. 602.

[27] Tr. 41.

[28] Tr. 43-63.

hypothetical questions about an individual with Ruggiero's background and specific types of limitations.[29]

Following this hearing, on May 14, 2024, the ALJ issued a decision denying Ruggiero's application for benefits.[30]  In that decision, the ALJ first concluded that Ruggiero had not engaged in substantial gainful activity since April 25, 2022.[31]  At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Ruggiero suffered from the following severe impairments: major depressive disorder and generalized anxiety disorder with panic attack.[32]  At Step 3 the ALJ determined that Ruggiero did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[33]

Between Steps 3 and 4 the ALJ concluded that Ruggiero retained the following residual functional capacity to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: she would be limited

---

[29] Tr. 64-70.

[30] Tr. 18-35.

[31] Tr. 20.

[32] *Id.*

[33] Tr. 21.

to occupations that require the claimant to understand, remember and carry out simple instructions, and make simple work-related decisions; she would be limited to occupations that require the claimant to deal with occasional changes in a routine work setting: she would be limited to occupations which require no more than occasional interaction with members of the general public; further, after an initial training period to learn the job, the claimant is limited to occupations which require no more than occasional interaction with supervisors and coworkers.[34]

In reaching this RFC determination, the ALJ made the following findings: the ALJ considered Ruggiero's reported, subjective symptoms, and found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record [.]"[35]  The ALJ also found that Ruggiero's "statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the medical evidence because the objective evidence does not support the severity of the

---

[34] Tr. 24.

[35] Tr. 26.

claimant's alleged symptoms related to her impairments."[36]   The ALJ then embarked on a lengthy review of the medical record evidence she found supported those findings.[37]

The ALJ next considered the medical opinions on record.  She was persuaded by the opinions of the state agency medical consultants, Drs. Wadicar Nugent and Dilip Kar, who opined that Ruggiero had no severe physical impairments requiring limitations or restrictions.[38]   The ALJ found that opinion to be consistent with the overall medical evidence of record and supported by physical examinations and diagnostic imaging.[39]

The ALJ was partially persuaded by the state agency mental health consultants, Drs. John Bigna and Shelly Ross.[40]  Both doctors opined that Ruggiero had "moderate limitations in understanding, remembering, or applying information, moderate limitations interacting with others, moderate limitations in concentrating, persisting, and maintain pace,

---

[36] Tr. 26.

[37] Tr. 26-31.

[38] Tr. 31.

[39] *Id.*

[40] Tr. 31.

and moderate limitations in adapting or managing oneself [.]"[41]   The ALJ was persuaded by this opinion to the extent that it supported Ruggiero's ability to do simple work, which the ALJ found to be supported by and consistent with the medical evidence of record.[42]   But the ALJ was not persuaded by the portions of the opinion finding moderate limitations in Ruggiero's abilities to: work in coordination or in proximity to others without being distracted; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and set realistic goals or make plans independently of others.[43] The ALJ explained that those conclusions were unpersuasive both because they lacked support and because they were "vague and/or ill-defined in vocational terms."[44]   The ALJ did incorporate certain supported and consistent limitations into Ruggiero's RFC, related to

---

[41] *Id.*

[42] Tr. 31-32.

[43] Tr. 32.

[44] *Id.*

understanding, remembering, or applying information, interacting with others, concentrating, persisting, and maintaining pace, and in adapting or managing oneself.[45]

Finally, the ALJ considered evidence of Ruggiero's activities of daily living, and found that, taken together, they "suggest the claimant can perform work" as described in the RFC.[46]

The ALJ then found at Step 4 that Ruggiero could not perform her past work but, at Step 5, found that she could perform other occupations with jobs that existed in significant numbers in the national economy, such as hand packager, produce packer, and retail marker.[47]   Having reached these conclusions, the ALJ determined that Ruggiero had not met the demanding showing necessary to sustain this claim for benefits and denied this claim.

---

[45] *Id.*

[46] Tr. 33.

[47] Tr. 34-35.

This appeal followed.[48]    On appeal, Ruggiero challenges the adequacy of the ALJ's decision arguing it is not supported by substantial evidence.[49]

As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be affirmed, and this appeal denied.

## III.    Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[50]    Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

---

[48] Doc. 1.

[49] Doc. 11.

[50] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

adequate to support a conclusion."[51]  Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[52]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[53]  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[54]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[55]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such

---

[51] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[52] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[53] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[54] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[55] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[56]    Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[57]    Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[58]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[59]    Thus,

---

[56] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[57] *Id.*

[58] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[59] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for their decision.[60] This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[61] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[62]

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or

---

[60] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

[61] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

[62] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[63]  This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[64]  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[65]

In making this determination, the ALJ follows a five-step evaluation.[66]  The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able

---

[63] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

[64] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

[65] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

[66] 20 C.F.R. §§404.1520(a), 416.920(a).

to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[67]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[68] In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[69] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[70]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from

---

[67] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

[68] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[69] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[70] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

engaging in any past relevant work.[71]  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[72]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination.  While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[73]  Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an

---

[71] *Mason*, 994 F.2d at 1064.

[72] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

[73] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

ALJ must always base [the] RFC on a medical opinion from a physician is misguided."[74]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.  Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[75]  These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.  On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[76]  Ultimately, it is our task to determine,

---

[74] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

[75] *Biller*, 962 F. Supp. 2d at 778–79.

[76] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

considering the entire record, whether the RFC determination is supported by substantial evidence.[77]

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in April of 2022 after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[78]

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. Supportability means "[t]he more relevant the objective

---

[77] *Burns,* 312 F.3d 113.

[78] 20 C.F.R. § 404.1520c(c).

medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[79]  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[80]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[81]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[82]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale

---

[79] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[80] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[81] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

[82] *Mason*, 994 F.2d at 1066

behind the decision is adequately articulated.[83]  On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base [their] RFC on a medical opinion from a physician is misguided."[84]

### D. Legal Benchmarks for Assessing a Claimant's Obesity

The plaintiff also challenges the ALJ's assessment of her obesity. Under the agency's regulations, the ALJ must analyze the effects of a claimant's obesity on his or her ability to function.[85]  This is particularly so when the ALJ identifies the claimant's obesity as a severe impairment at Step 2.[86]  The Third Circuit has explained that the ALJ need not "use particular language or adhere to a particular format in conducting his analysis" of a claimant's obesity.[87]   Rather, so long as the ALJ "meaningfully consider[s] the effect of a claimant's obesity, individually

---

[83] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

[84] *Cummings*, 129 F. Supp. 3d at 214–15.

[85] *See* SSR 02-01p, SSR 00-3p.

[86] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[87] *Diaz*, 577 F.3d at 504 (citations omitted).

and in combination with her impairments, on her workplace function at step three and at every subsequent step[,]"[88] a remand is not required.[89]

### E. Simple Tasks RFC Analysis

The claimant challenges the ALJ's decision to limit her to a simple tasks RFC in light of a finding that she suffers from a moderate limitation in concentration, persistence, and pace.  The Third Circuit rejected a *per se* rule that a simple tasks RFC was inadequate to account for such limitations in this area.[90]  Rather, the Court of Appeals held that "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'"[91]  For such an explanation to be valid, the ALJ may highlight "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the

---

[88] *Id.* at 504.

[89] *See Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016); *Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014).

[90] *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 212 (3d Cir. 2019).

[91] *Id.* at 211.

claimant]'s activities of daily living, which demonstrated that [s]he is capable of engaging in a diverse array of 'simple tasks[.]'"[92]

### F. This Case Will Be Affirmed.

Our review of the ALJ's decision denying an application for benefits is significantly deferential.  Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is, "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[93]  Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Ruggiero argues there are four errors in the ALJ's decision.  First, she alleges the ALJ failed to properly evaluate her morbid obesity. Ruggerio argues that the ALJ failed to include analysis of the cumulative impact of obesity and other impairments, and failed to consider SSR 19-2p, which discusses postural limitations in the context of obesity. Specifically, she alleges that the ALJ should have concluded that the

---

[92] *Id.* at 214.

[93] *Biestek*, 139 S. Ct. at 1154.

24

cumulative effect of obesity and plantar fasciitis make light work impossible. After consideration, we conclude the ALJ sufficiently considered obesity in conjunction with other impairments.

The ALJ acknowledged obesity as a non-severe impairment.[94] She explained that in determining Ruggiero's RFC, she considered all non-severe impairments,[95] which is supported by the decision's references to Ruggiero's BMI.[96] The ALJ also explained that she was persuaded by the medical opinions of Drs. Nugent and Vigna, who each concluded Ruggiero had no severe physical impairments, including obesity.[97] The ALJ also explained that Ruggiero's activities of daily living belied the need for postural limitations in her RFC.[98] These references are sufficient to evince consideration of obesity in combination with other impairments, and of obesity's relationship to possible postural limitations. We therefore conclude there was no error in the ALJ's treatment of obesity.

---

[94] Tr. 21.

[95] *Id.*

[96] Tr. 26-27.

[97] Tr. 31, 75, 78, 87, 90.

[98] Tr. 25-26.

Ruggiero's second alleged error is that the ALJ failed to properly consider one of the medical opinions on record, that of Ms. Lombardi. Ruggerio does not dispute that the ALJ discussed both essential factors (supportability and consistency) in relation to Lombardi's opinion. Instead, she argues that the facts do not support the ALJ's conclusions on those factors. Ruggiero's briefs[99] attack many of the ALJ's specific conclusions, arguing she should have reached different conclusions from certain facts. But we may not re-weigh the evidence, and so these factual attacks are unavailing. Ruggiero cites caselaw for the principles that an ALJ cannot reject evidence for no reason and ought to explain specific reasons for departing from the medical opinion of a consultative examiner. We conclude the ALJ satisfied those obligations: The ALJ's

---

[99] We note that substantial portions of Ruggiero's reply brief repeat her brief in support word for word. (*Compare* doc. 11 *with* doc. 17). As we have recently twice-reminded Ruggiero's counsel, there is no obligation to file a reply brief. *Geibe v. Bisignano*, No. 1:24-CV-1400, 2025 WL 1570000, at *6 n.2 (M.D. Pa. June 3, 2025); *Hoppes v. Bisignano*, No. 24-1503, 2025 WL 1919491 at *8 n.3 (M.D. Pa. July 11, 2025); *see also, CSX Transp. Co.* v. *Novolog Bucks Cnty.*, 2006 WL 1451280, at *17 n.17 (E.D. Pa. May 24, 2006) ("Response, reply, and surreply briefs are intended to shed greater light on the substantive issues and address new arguments or nuances raised by opposing counsel; they are not fora for reiterating word for word one's prior argument.").

decision devotes nearly a full single-spaced page to analysis of Lombardi's opinion, and that page is a fulsome and detailed explanation of the ALJ's reasons for finding Lombardi's opinion only partially persuasive. We conclude the ALJ's treatment of this opinion is supported by substantial evidence.

Third, Ruggiero alleges that the ALJ erred in crafting an RFC that limits her to simple instructions and simple work-related decisions, rather than limiting her to one-and two-step tasks. Ruggiero argues that the ALJ should have relied on the medical opinion evidence, and that the RFC "is in contradiction with all opinion evidence in the record."[100] But we do not agree that the state agency psychological consultants limited Ruggiero to one-and two-step tasks—that record is ambiguous at best. Dr. Vigna stated that "due to the ability to understand and remember one and two-step instructions, the claimant is able to perform simple, routine tasks [,]"[101] and Dr. Ross said Ruggiero "can understand, retain and follow simple instructions (i.e., perform/follow one and two-step

---

[100] Doc. 11 at 12.

[101] Tr. 80.

tasks/instructions.)"[102]  The intermixing of terminology makes the precise limitations opined here difficult to divine, as the ALJ recognized:

> [A]s it pertains to the doctors' indication that the claimant is capable of performing one to two step tasks, if it is an example, and not a limitation, it is consistent with, and supported by the longitudinal record. However, if it is meant to be a limitation, it is not consistent with, or supported by the longitudinal record or the claimant's reported activities of daily living[.][103]

As for Ms. Lombardi's opinion that Ruggiero has "mild" limitations to understanding and remembering simple instructions, but "moderate" limitations to carrying out the same, those limitations are not inconsistent with an RFC limiting Ruggiero to "understand, remember and carry out simple instructions, and make simple work-related decisions."[104]  Firstly, as we have explained, the Third Circuit rejected the idea that a moderate limitation in this area prohibits a claimant from completing simple tasks.[105]  Secondly, it is not a requirement that an RFC

---

[102] Tr. 92

[103] Tr. 32.

[104] Tr. 366.

[105] *Hess,* 931 F.3d at 212.

be consistent with a medical opinion.[106]  What is required is for the ALJ

to explain what evidence leads them to a different conclusion than all

medical opinions.[107]  The ALJ here did that, explaining that she was:

> [N]ot persuaded by the portions of the opinion that the claimant would have a moderate limitation carrying out simple instructions and making simple decisions . . . [because] this assessment is based on a one-time snapshot of the claimant's function by a nontreating provider who was not familiar with the whole record. The undersigned finds that opinions appear to be based heavily on the claimant's subjective complaints, particularly at that time and are not consistent with the clinical findings on exam that showed some mild memory impairment but intact concentration, coherent thought processes, cooperative behavior, normal speech, normal motor behavior, and fair insight and judgement and are not supported by the evidence reflecting no more than medication prescribed by her primary care provider and reported therapy, without evidence of recommendation for a more intensive level of care, such as inpatient psychiatric hospitalization, partial hospitalization programming, or structure[d] living, as previously discussed.[108]

We conclude the ALJ's decision properly explained her reasons for

departing from this opinion.  The specific references to record evidence

---

[106] *Cummings*, 129 F. Supp. 3d at 214–15.

[107] *Durden*, 191 F. Supp. 3d at 455.

[108] Tr. 32.

assure us that this portion of the decision is supported by substantial evidence.

Finally, Ruggiero argues that the ALJ made errors in evaluating Ruggiero's reported symptoms.  She alleges the ALJ inappropriately made her own inferences as to the meaning of the phrase "no acute distress" and improperly weighed certain facts, specifically: that Ruggiero got treatment not from a psychologist or similar specialist but from her PCP, that she did not get inpatient or similar treatment, that she was not compliant with medication regimes, that the ALJ should have credited Ruggiero's self-reported symptoms over treatment notes indicating normal mental health, that she was capable of caring for her service dog, and that she traveled to New Jersey.[109]

Ruggiero overreaches in arguing "the ALJ improperly relied on his [sic] own inferences from medical record notations of 'no acute distress' to determine Ms. Ruggiero's RFC."[110]  True, the ALJ did report several instances in which the medical record noted "no signs of acute

---

[109] Doc. 11 at 16-20.

[110] Doc. 11 at 16.

distress,"[111] but there is nothing in the decision suggesting the ALJ improperly interpreted that evidence. The notes in the medical record of "no acute distress" are merely listed in the ALJ's decision as being contained in the medical record, and that fact is indisputable.[112] Ruggiero apparently believes the ALJ's references to these notes somehow show that the ALJ improperly made further inferences, but she does not explain what inference the ALJ made, where such inference is shown in the text of the decision, nor why such inference is inappropriate, and so this argument fails.

As to the facts which Ruggiero argues the ALJ misinterpreted, we discern no error in the ALJ's treatment of these facts. The mental health care issued through a PCP and the lack of inpatient hospitalizations were not improper to discuss, as they are on the subject of "[t]reatment[s], other than medication, an individual receives or has received for relief of pain or other symptoms" which the regulations explicitly direct an ALJ

---

[111] Tr. 23, 26, 27, 28.

[112] Tr. 672, 740, 781.

to consider.[113]    As for Ruggiero's non-compliance with medication regimes, same as "no acute distress," it is not error to simply report that objective fact, which is established by the record, and to which neither the ALJ nor any medical source pinned any specific conclusion.    The evaluation of Ruggiero's self-reported symptoms is also not error: the ALJ was within her discretion to credit other portions of the record over those informed by Ruggiero's self-reports.

As to the argument concerning Ruggiero's late service dog:    The court is sympathetic to the general principles that: (1) certain pets are akin to family members, and (2) it may be unfair to 'punish' a claimant for caring for a family member, as that task may be personally significant in a way that makes it a poor analogue for work capabilities.    However, that does not mean it is reversible error for the ALJ to reference or consider such care.    Were this fact the sole, or even a prominent, reason for denial of disability benefits, we might have doubt that such a decision

---

[113] [20 C.F.R. § 404.1529(c)(3)(v); *see also* SSR 16-3p, 2017 WL 5180304, at *8 (ALJ may consider if "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints").]

was supported by substantial evidence. But where, as here, the caregiving in question is one of at least a dozen activities of daily living that supported the ALJ's conclusion, we cannot conclude the mere presence of this consideration means the resulting RFC is not based in substantial evidence.

Lastly, Ruggiero argues that the ALJ failed to explain why her trips to New Jersey belied her reported symptoms. The ALJ did mention these trips, but, like the service dog, discussed it as one item in a list comprising at least a dozen distinct activities of Ruggiero's daily living.[114] The ALJ followed that list with the explanation that "taken together and considered in conjunction with the above medical evidence of record, [these activities] suggest that the claimant can perform work within the above parameters."[115] That passage clearly refers back to the ALJ's discussion of the medical evidence, which includes the observation that "[Ruggiero] testified she could not leave her home for more than one

---

[114] Tr. 33.

[115] *Id.*

hour[.]"[116]  Ruggiero's address is in Vandling, Pennsylvania,[117] and so it would clearly take in excess of an hour to reach, much less visit in and return from, New Jersey.  We cannot say it was error for the ALJ to consider this apparent contradiction as one of many reasons that Ruggiero's activities of daily living undermined her statements about her symptoms.

In sum, we find no error in the ALJ's treatment of Ruggiero's activities of daily living, nor of symptom evidence generally, nor anywhere else in her well-reasoned opinion.  Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and that this decision should be affirmed.

## IV.  Recommendation

For the foregoing reasons, IT IS RECOMMENDED that the decision of the Commissioner in this case be AFFIRMED.

---

[116] Tr. 22.

[117] Tr. 15

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of December 2025.


*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

35